1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9  UNITED STATES OF AMERICA,                    CASE NO. 1:12-cv-00111-LJO-SMS

10                          Plaintiff,

11         v.                                    **FINDINGS AND RECOMMENDATIONS RECOMMENDING THE GRANT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR DEFAULT JUDGMENT**

12  APPROXIMATELY $18,700.00 IN U.S. CURRENCY,

13
                                                (Doc. 13)
14                          Defendant.

15  _____/

16         In this civil forfeiture action, Plaintiff United States of America ("Government") seeks (1)

17  default judgment against the interests of Della Marie Sandoval, Mario Castro, and Joe Sandoval,

18  Jr., in approximately $18,700.00 in U.S. currency, and (2) entry of a final forfeiture judgment to

19  vest in the Government all right, title and interest in the defendant currency.  The Government's

20  motion has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule

21  72-302(c)(19) and is considered in accordance with Local Rule A-540(d).

22         This Court has reviewed the papers and has determined that this matter is suitable for

23  decision without oral argument pursuant to Local Rule 78-230(h).  Having considered all written

24  materials submitted, the undersigned recommends that the District Court grant the Government

25  default judgment; enter final forfeiture judgment to vest in the Government all right, title and

26  interest in the defendant currency; and order the Government, within ten (10) days of service of

27  an order adopting these findings and recommendations, to submit a proposed default and final

28  forfeiture judgment consistent with these findings and recommendations.

1

I.    **Factual Background**[1]

Beginning in 2010, members of the Fresno Methamphetamine Task Force (FMTF) investigated Ramon Avilez for sales of heroin in the Fresno County area.  Zacarias Rocha Castro, aka Zacarias Castro Rocha, was identified as Avilez's heroin supplier.  As a result of numerous undercover heroin buys and court-ordered wire-tap intercepts, FMTF agents identified 411 N. Glenn Ave., Fresno, California, as a heroin stash house.

An undercover agent purchased heroin from Avilez on multiple occasions: before September 14, 2010, 26.4 grams of heroin for $800.00; on September 14, 2010, 127.7 grams for $4000.00; on September 27, 2010, 257.2 grams for $7500.00; and on October 21, 2010, 263.2 grams for $7500.00.  The undercover agent first traveled to 411 N. Glenn just before the September 27, 2010 buy.

In an attempt to identify the source of Avilez's heroin, the undercover agent contacted Avilez to negotiate a purchase of five to six ounces of heroin on November 30, 2010.  Avilez drove to 411 N. Glenn, where he parked in a parking stall.  Zacarias Castro came out of apartment 211, approached Avilez's driver's side window, then returned to apartment 211.  Thereafter, Zacarias Castro again came out of apartment 211 carrying a white bag and returned to Avilez's car window before returning to apartment 211 without the bag.  Avilez then drove directly to a meeting with the undercover agent and sold the agent 156.7 grams of heroin in a white plastic bag for $4000.00.

On February 21, 2011, the undercover agent and Avilez met to discuss a large heroin purchase.  After the meeting, Avilez drove to 3057 South Elm Avenue, Fresno, California, where agents observed that he met with Zacarias Castro, who was driving a gray Saturn.   Avilez then returned to his home before traveling to 411 N. Glenn and pulling into a parking stall.  The gray Saturn that Zacarias Castro had driven earlier was parked in another stall.  A woman, later identified as Della Sandoval, arrived and entered apartment 211, which was later identified as her residence.  Della Sandoval came out of apartment 211 with a black plastic bag, walked to the

---

[1]  These facts were derived from the Government's application and from the Court's records.

driver's side window of Avilez's car, and remained there for a short period before returning to her apartment.  Avilez went directly from 411 N. Glenn to a meeting with the undercover agent and handed the agent a black plastic bag consistent with the bag that Della Sandoval carried from her apartment.  The bag contained 387.6 grams of heroin, for which the agent paid $10,000.

Agents again observed Zacarias Castro driving to 411 N. Glenn on or about May 11, 2011.  This time, Zacarias Castro entered apartment 113.  (Investigators later determined that Della Sandoval had moved from apartment 211 to apartment 113.)  While Zacarias Castro was in the apartment, agents intercepted a telephone call between Zacarias Castro and a known drug customer, who agreed to meet at the Rite Aid store on Blackstone Avenue.  Della Sandoval drove Zacarias Castro to Rite Aid in her vehicle.  Agents conducting surveillance from within Rite Aid observed a hand-to-hand transaction between Zacarias Castro and the customer.

On or about May 24, 2011, agents monitored an intercepted telephone call placed by Zacarias Castro to a suspected drug customer who told Zacarias Castro that he "ran out of those prescriptions."  When Zacarias Castro stated, "You already got them," the customer repeated that he "ran out of them" and asked "you don't got any dope do you?"  Zacarias Castro responded, "No, call Della."  After the customer stated that he did not have Della's number, Zacarias Castro said that he would call Della or her Mom to see if they had anything and that he would have Della call the customer.

Surveillance next intercepted a telephone call from Zacarias Castro to Della Sandoval in which Zacarias Castro told her that "Roger" wanted her to call.  When Della Sandoval asked what Roger wanted, Zacarias Castro said he did not know, telling Della Sandoval to call Roger at 241-9349.  Zacarias Castro instructed Della Sandoval not to tell Roger anything about Zacarias Castro.

On June 2, 2011, a federal grand jury for the Eastern District of California indicted Della Sandoval, Zacarias Castro Rocha, Jesus Ramon Avilez, and others for violations of 21 U.S.C. §§ 841 and 846 (Conspiracy to Distribute and Possess with the Intent to Distribute Heroin) in *United States v. Jesus Ramon Avilez* (1:11-cr-00107-LJO).

///

On or about June 3, 2011, Fresno County Sheriff's Department deputies and FMTF agents executed a federal search warrant at 411 North Glenn Avenue, apartment 113.  The deputies and agents found that Mario Castro and Della Sandoval, who were brother and sister, occupied apartment 113, and that Della Sandoval was the tenant.  Della Sandoval was arrested pursuant to the grand jury indictment and arrest warrant.

From a room identified as Della Sandoval's bedroom, deputies and agents located a purse claimed by Della Sandoval containing a slip of paper on which was written, "Roger 241-9349." From Mario Castro's bedroom, agents and deputies located a red Motorola Razor telephone contained in a backpack next to the bed; a black notebook containing handwritten phone listings and slips of paper bearing names and phone numbers stored on a desk next to the bed; and multiple cell phones stored in a bag underneath the desk.  In a hall closet, agents and deputies located a PG&E bill in Della Sandoval's name for 411 North Glenn, apartment 211.

In the course of the search, deputies and agents used a drug-detecting dog named "Jake," who alerted to four separate areas of the apartment.  In Della Sandoval's bedroom, Jake alerted to a chest of drawers in the closet, the second-to the top drawer of which contained a piece of plastic wrap with a black tarry substance suspected to be heroin, and to a pile of clothes concealing a drug use, or "hype," kit , which included springs, scissors, cotton, and a spoon with a black tarry substance suspected to be heroin.  In Mario Castro's bedroom, Jake alerted to a clear plastic bag on the desk top containing marijuana and a safe in the floor of the bedroom closet. The safe contained an unloaded nickel-finish derringer-style handgun and a red container with the defendant currency, composed of 182 $100 bills and 25 $20 bills, for a total of $18,700.00. Jake also alerted to the currency.  Agents seized the currency from the safe.  Finally, Jake alerted to Mario Castro's pants pocket, which contained approximately $364.00 in cash.

The currency from the safe was re-tested using a second drug-detecting dog.  Agents removed the money from the safe and placed it in a brown paper bag.  The second dog was run past three different brown paper bags, one of which contained the currency and two of which contained no-drug items.  The dog alerted to the bag containing the defendant currency.

///

1       Mario Castro told police that he lived with Della Sandoval, who had moved from

2  apartment 211 (on the second floor) to apartment 113 (on the ground level), on behalf of Mario

3  Castro, who is confined to a wheel chair and requires physical assistance because of his health.

4  Mario Castro's access to apartment 113 was easier.  Mario Castro's nephew and Della

5  Sandoval's son, Joe Sandoval, Jr., lived directly upstairs in apartment 213.

6       Despite contrary evidence from the federal wire intercepts, Mario Castro denied knowing

7  of drug sales from either apartment 211 or apartment 113.  He had no knowledge that Sandoval

8  was involved in any type of drug sales.

9       Mario Castro told police that he had saved the currency inside the safe over years of

10  collecting social security checks.  When asked whether he had any proof of his ownership of the

11  currency, Mario Castro replied that although he had no bank account of any type, he might be

12  able to produce SSI check stubs supporting his ownership.  No check stubs or other evidence of

13  the currency's source or ownership were ever located.  Although Mario Castro claimed the safe

14  inside his bedroom closet was his, he did not know the combination.  Joe Sandoval, Jr., knew the

15  combination.  Joe Sandoval, Jr., assisted Mario Castro with bill payment and check cashing.

16       The Economic Development Department (EDD) had no record of employment for Della

17  Sandoval.  Its 2009-2010 reports indicated that Joe Sandoval, Jr., received income from a CDSS

18  government program as an adult home care support provider.  Mario Castro had income from the

19  Fresno Unified School District.

20       On August 16, 2011, Mario Castro and Joe Sandoval, Jr., each filed an administrative

21  claim to the defendant currency alleging that the defendant currency represented the life savings

22  of Mario Castro and Joe Sandoval, Jr., neither of whom maintained a bank account.  Joe

23  Sandoval, Jr., claimed that he had save $12,000.00 of the defendant currency from legitimate

24  wages with the intent of purchasing a home and starting a car-detailing business. Mario Castro

25  claimed that he had saved $6700.00 to purchase medical equipment needed to assist him with his

26  mobility issues.

27  ///

28  ///

**II.**   **Procedural Background**

This is a civil action *in rem* to forfeit to the United States of America approximately $18,700.00 in U.S. currency ("defendant currency").  Because the defendant currency is derived from proceeds traceable to one or more violations of 21 U.S.C. §§ 841 and 846 (Conspiracy to Distribute and Possess with the Intent to Distribute Heroin ) it is subject to forfeiture pursuant to 18 U.S.C. § 881(a)(6).

On January 25, 2012, the Government filed its complaint for forfeiture in rem, alleging that $18,700.00 of defendant currency was subject to forfeiture to the Government under 21 U.S.C. § 881(a)(6) because it was derived from proceeds traceable to one or more violations of 18 U.S.C. § 841, *et seq.*.  On January 26, 2012, based on the complaint's allegations, the Clerk of the Court issued a Warrant for Arrest of Articles In Rem for the Defendant Currency.  The warrant was executed on February 1, 2012.

On January 31, 2012, this Court authorized publication of the forfeiture action via the internet forfeiture website www.forfeiture.gov for at least thirty consecutive days.  According to the Government's Declaration of Publication, a Notice of Civil Forfeiture was published on the official government internet site (www.forfeiture.gov) for thirty days beginning on February 5, 2012.

On January 26, 2012, the U.S. Attorney served both Della Sandoval and her attorney Mark A. Broughton with notice of this action by certified mail, return receipt requested.  Also on January 26, 2012, the U.S. Attorney served Mario Castro, Joe Sandoval, Jr., and their attorney Roger S. Bonakdar with notice of this action by certified mail return receipt requested.

On March 1, 2012, Bonakdar requested an extension of the filing deadline for his clients' claims.  The United States granted a three-week extension of time to March 22, 2012.  After Bonakdar requested an additional extension on March 22, 2012, the United States granted an additional extension of the filing deadline to April 12, 2012.  No further requests to extend the time period on behalf of Mario Castro or Joe Sandoval, Jr., were received thereafter.

Neither Della Sandoval, Mario Castro, or Joe Sandoval, Jr., filed a claim and answer to the complaint in this matter as required by Rule 5(G) of the Supplemental Rules for Admiralty or

1    Royalty Claims and Asset Forfeiture Actions before expiration of the time in which such claim

2    and answer were required to be filed.

3         As part of the Government's Requests for Entry of Default, the United States Attorney

4    declared under penalty of perjury that on information and belief, neither Della Sandoval, Mario

5    Castro, nor Joe Sandoval, Jr.,was in the military service or was an infant or incapacitated person.

6    Neither potential claimants Della Sandoval, Mario Castro, and Joe Sandoval, Jr., nor any other

7    potential claimant, filed an answer or otherwise defended the action.  The Clerk entered defaults

8    as to Della Sandoval, Mario Castro, and Joe Sandoval, Jr., on April 18, 2012. The Government

9    moved for Default Judgment on April 20, 2012.

10                                  **DISCUSSION**

11   **I.    Sufficiency of the Complaint**

12        The Government contends that the allegations set forth in the verified complaint for

13   Forfeiture In Rem and the cited facts provide ample grounds for forfeiture of the defendant

14   currency.  A complaint's sufficiency is one factor for consideration in deciding whether to grant

15   default judgment.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Money or other

16   things of value are subject to forfeiture if they are derived from proceeds traceable to one or more

17   violations of 18 U.S.C. § 841, *et seq*.  21 U.S.C. § 881(a)(6).

18        The Government's verified complaint alleges that the defendant currency is subject to

19   forfeiture since it was derived from proceeds traceable to one or more violations of 18 U.S.C. §

20   841, *et seq.*  21 U.S.C. § 881(a)(6).  As set forth above and in the verified complaint, the Secret

21   Service seized the defendant currency on June 3, 2011, in Fresno, California.

22        The complaint meets the requirements of Rule G of the Supplemental Rules for

23   Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, in

24   that it is verified; states the grounds for subject matter jurisdiction, in rem jurisdiction, and

25   venue; describes the property seized and the circumstance of its seizure; and identifies the

26   relevant statutes.  In the absence of assertion of interests in the defendant currency, this Court is

27   not in a position to question the facts supporting its forfeiture.  As alleged, the facts set forth a

28   ///

1  sufficient connection between the defendant currency and illegal drug activity to support a

2  forfeiture.

3  **II.    Notice Requirements**

4         The Fifth Amendment's Due Process Clause prohibits the Government from taking

5  property without due process of law.  Individuals whose property interests are at stake are

6  entitled to notice and an opportunity to be heard.  The requisite notice was provided to Della

7  Sandoval, Mario Castro, and Joe Sandoval, Jr.

8         **A.    Notice by Publication**

9         Supplemental Rule G(4) provides that in lieu of newspaper publication, the Government

10 may publish notice "by posting notice on an official government forfeiture site for at least 30

11 consecutive days."  Local Admiralty and In Rem rules further provide that the Court shall

12 designate by order the appropriate vehicle for publication.  Local Rules A-530 and 83-171.  On

13 January 31, 2012, this Court authorized publication of the forfeiture action via the internet

14 forfeiture website www.forfeiture.gov for at least thirty days.  According to the Government's

15 Declaration of Publication (Doc. 9), a Notice of Civil Forfeiture was published on the official

16 government internet site (www.forfeiture.gov) for thirty days beginning on February 5, 2012.

17 Accordingly, the Government satisfied the requirements for notice to Della Sandoval, Mario

18 Castro, and Joe Sandoval, Jr., by publication.

19        **B.    Personal Notice**

20        When the Government knows the identity of the property owner, due process requires

21 "the Government to make a greater effort to give him notice than otherwise would be mandated

22 by publication."  *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998).  In such

23 cases, the Government must attempt to provide actual notice by means reasonably calculated

24 under all circumstances to apprise the owner of the pendency of the forfeiture action.  *Dusenbery*

25 *v. United States*, 534 U.S. 161, 168 (2002) (*quotations omitted*).  *See also Mullane v. Central*

26 *Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) (requiring such notice "as one desirous of

27 actually informing the absentee might reasonably adopt to accomplish it").  "Reasonable notice,

28 however, requires only that the government attempt to provide actual notice; it does not require

1  that the government demonstrate that it was successful in providing actual notice." *Mesa*

2  *Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005).

3        Supplemental Rule G(4)(b) mirrors this requirement, providing for notice to be sent by

4  means reasonably calculated to reach the potential claimant.  Local Rule A-540 also requires that

5  a party seeking default judgment in an action in rem demonstrate to the Court's satisfaction that

6  due notice of the arrest of the property has been given both by publication and by personal

7  service of the person having custody of the property, or if the property is in the hands of a law

8  enforcement officer, by personal service on the person who had custody of the property before its

9  possession by a law enforcement agency or officer.  Notice must also be provided by personal

10  service or certified mail, return receipt requested, on every other person who has appeared in the

11  action and is known to have an interest in the property, provided that failure to give actual notice

12  to such other person may be excused upon a satisfactory showing of diligent efforts to provide

13  notice without success.  L.R. A-540(a).  Notwithstanding the Supplemental Rules and L.R. A-

14  540(a), the Government provides sufficient notice when the notice complies with the

15  requirements of F.R.Civ.P. 4.  *See* F.R.Civ.P. 4(n)(1) (providing that when a federal statute

16  authorizes forfeiture, "[n]otice to claimants of the property shall then be sent in the manner

17  provided by statute or by service of a summons under this rule").  In this case, on January 26,

18  2012, the Government served Della Sandoval, Mario Castro, and Joe Sandoval, Jr., as well as

19  their respective attorneys with actual notice by certified mail, return receipt requested.

20        **C.**    **Failure to File Claim or Answer**

21        Supplemental Rule G(5) requires any person who asserts an interest in or right against the

22  defendant currency to file a claim with the Court within 35 days after service of the

23  Government's complaint or 30 days after the final publication of notice.  Supplemental R.

24  G(4)(b) & (5).  Failure to comply with the procedural requirements for opposing the forfeiture

25  precludes a person from establishing standing as a party to the forfeiture action.  *Real Property*,

26  135 F.3d at 1317.  The Clerk of Court properly entered default against Della Sandoval, Mario

27  Castro, and Joe Sandoval, Jr., on April 18, 2012.

28  ///

**D.** **Default Judgment**

The Government seeks judgment against the interests of Della Sandoval, Mario Castro, and Joe Sandoval, Jr., and final forfeiture judgment to vest in the Government all right, title and interest in the defendant currency. The Supplemental Rules do not set forth a procedure to seek default judgment in rem. Supplemental Rule A provides, "The Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules."

Pursuant to the Federal Rules of Civil Procedure, default entry is a prerequisite to default judgment. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the failure is shown by affidavit or otherwise, the clerk must enter the party's default." F.R.Civ.P. 55(a). Generally, the default entered by the clerk establishes a defendant's liability.

> Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment. The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.
>
> *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (*internal citations and quotation marks omitted*).

As noted above, the Government properly obtained default entries against the interests of Della Sandoval, Mario Castro, and Joe Sandoval, Jr. There is no impediment to default judgment sought by the Government against them. The Government properly seeks judgment against the interests of the entire world, that is, a final forfeiture judgment to vest in the Government all right, title, and interest in the defendant currency. "A judgment in rem affect the interests of all persons in designated property . . . . [T]he plaintiff is seeking to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons." *Hanson v. Denckla*, 357 U.S. 235, 246 n. 12 (1958). Because of the defaults of Della Sandoval, Mario Castro, and Joe Sandoval, Jr., the Government is entitled to a final forfeiture judgment.

///

///

**RECOMMENDATIONS**

In light of the reasons discussed above, this Court recommends that

1.      The District Court grant Plaintiff United States of America default judgment against the interests of Della Sandoval, Mario Castro, and Joe Sandoval, Jr.;

2.      The Clerk of Court enter final forfeiture judgment to vest in Plaintiff United States of America all right, title and interest in the defendant currency; and

3.      The District Court order Plaintiff United States of America, within ten (10) days of service of an order adopting these findings and recommendations, to submit a proposed default and final forfeiture judgment consistent with the findings and recommendations and the order adopting them.

These findings and recommendations are submitted to District Judge Lawrence J. O'Neill pursuant to 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72-304.  Within fifteen (15) court days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review these findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specific time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    May 17, 2012**                   _____/s/ Sandra M. Snyder_____
                                            UNITED STATES MAGISTRATE JUDGE