1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:12-cv-00111-LJO-SMS |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS RECOMMENDING DENIAL OF CLAIMANTS' MOTION TO SET ASIDE DEFAULT JUDGMENT** |
| v. | |
| APPROXIMATELY $18,700.00 IN U.S. CURRENCY, | |
| Defendant. | (Doc. 20) |
| _____/ | |

Claimants Mario Castro and Joe Sandoval, Jr., by their attorneys Bonakdar Law Firm, move to set aside the Court's entry of default judgment and final judgment of forfeiture, entered June 13, 2012, of $18,700.00 of U.S. currency seized in the course of the execution of a search warrant. Claimants contend that good cause to set aside the default judgment exists because (1) the Government improperly sought a default judgment in *ex parte proceedings* after the Claimants had appeared in the action through counsel, and (2) Claimants had a good faith belief that the dispute had been settled settlement with the government at the time that the Court entered the default judgment. The Government responds that the Claimants do not demonstrate good cause for setting aside the default judgment against them.

## I.   Procedural and Factual Background

The defendant currency was seized during the execution of a search warrant on premises in which Claimant Mario Castro lived with his sister, Della Sandoval. On August 16, 2011, Mario Castro and Joe Sandoval, Jr., each filed an administrative claim to the defendant currency,

1

1   alleging that it represented the life savings of Mario Castro and Della Sandoval's son, Joe

2   Sandoval, Jr., neither of who maintained a bank account.

3        On January 25, 2012, the Government filed its complaint for forfeiture in rem alleging

4   that because the defendant currency was derived from proceeds traceable to one or more

5   violations of 21 U.S.C. §§ 841 and 846 (Conspiracy to Distribute and Possess with the Intent to

6   Distribute Heroin), it was subject to forfeiture pursuant to 18 U.S.C. § 881(a)(6).  On January 26,

7   2012, the U.S. Attorney served Mario Castro, Joe Sandoval, Jr., and their attorney Roger S.

8   Bonakdar with notice of this action by certified mail, return receipt requested.

9        On January 31, 2012, this Court authorized publication of the forfeiture action via the

10  official internet forfeiture website www.forfeiture.gov for at least thirty consecutive days.

11  According to the Government's declaration of publication, a notice of civil forfeiture was

12  published on www.forfeiture.gov for thirty days beginning on February 5, 2012.

13       On March 1, 2012, which was the deadline date for claimants' filing their claim with the

14  Court, Claimants requested an extension of the filing deadline.  Doc. 21-1 at 2-3.  The

15  Government agreed to a three-week extension of time to March 22, 2012.[1]  Doc. 21-1 at 4.

16       On March 22, 2012, Claimants requested an additional three-week extension, noting that

17  Bonakdar was continuing to assemble the documents regarding Claimants' finances that the

18  Government had requested after Bonakdar and Assistant U.S. Attorney Heather Mardel Jones

19  had "discussed a potential resolution of the case."  Doc. 21-1 at 7. The Government agreed to an

20  additional extension of the filing deadline to April 12, 2012, but warned Claimants that no

21  additional extension would be granted without "significant good cause."  Doc. 21-1 at 9.  Neither

22  Claimant filed a claim on or before April 12, 2012, nor requested an additional extension.

23       On April 16, 2012, Bonakdar sent the Government documentation of Joe Sandoval, Jr.'s

24  tax returns and Mario Castro's SSI income.  Doc. 21-1 at 14-15.  He offered to settle the

25  forfeiture case upon payment to his clients of $16,500.00.  Doc. 21-1 at 15.

26  ///

27

28

---

[1]  The parties never submitted for the Court's approval the stipulations of their agreements to enlarge time.

1    On April 17, 2012, the Government requested entry of default against Mario Castro and

2    Joe Sandoval, Jr.  The Clerk entered default against them on April 18, 2012.

3    On April 18, 2012, Jones responded to Bonakdar's April 16 letter and reminded him that

4    the deadline to file a claim on this clients' behalf had been April 12, 2012.  Since Bonakdar had

5    not requested further extension, the Government had requested, and the Clerk of Court had

6    entered, defaults against both Claimants.  Rejecting Claimants' settlement offer, Jones advised

7    Bonakdar that simply proving Mario Castro's and Joe Sandoval, Jr.'s income did not address the

8    critical issue of the source of the currency in the safe.

9    Later the same day, Bonakdar requested that the Government vacate the defaults entered

10   against his clients and allow him to file a responsive pleading on or before April 20, 2012.  Doc.

11   21-1 at 33-34.  Bonakdar criticized Jones for not advising him of her intent to request entry of

12   defaults against his clients.  Doc. 21-1 at 33.

13   In a response sent April 20, 2012, Jones rejected the proposition that she had a legal or

14   ethical duty to inform Bonakdar that he had missed a deadline before seeking default as

15   "preposterous," noting her duty to her own client and "the ends of justice."  Doc. 21-1 at 37.

16   Reminding Bonakdar that she had previously warned him that a third extension of time to file his

17   clients' responsive pleading was unlikely, Jones noted that, in any event, Bonakdar had never

18   requested a third extension.  Doc. 21-1 at 38.

19   In an e-mail sent on April 30, 2012, Bonakdar again asked the Government to stipulate to

20   an agreement to set aside the default, or in the alternative, to negotiate a settlement.  The

21   Government declined to agree to set aside the default, referring Bonakdar to a recent decision

22   (*United States v. Real Property Located at 1 Mile Up Hennessey Road, Burnt Ranch, California*,

23   Case No. 2:09-cv-01940-GEB-GGH) addressing the setting aside of a default in a forfeiture case.

24   On May 1, 2012, Bonakdar asked whether the Government would be receptive to

25   settlement in lieu of his pursuing a motion to set aside the default.  Jones responded that the

26   maximum that she could offer in settlement was 7.5 per cent of the defendant currency, or

27   $1,402.50, to be paid jointly to Mario Castro and Joe Sandoval, Jr.  Bonakdar declined the

28   Government's offer on May 9, 2012, but made a counter offer of $2850.00.  On May 10, 2012,

1   Jones advised Bonakdar that the Government declined his counter-offer but that the May 1, 2012

2   offer remained on the table.  She warned Bonakdar that because the Government's motion for

3   default was proceeding, time was of the essence.

4        On May 17, 2012, the Magistrate Judge issued findings and recommended that the

5   District Judge grant the Government's ex parte application for default judgment.  The findings

6   and recommendations provided that any party could file written objections within fifteen court

7   days.

8        On June 6, 2012, continuing the earlier e-mail string in which he and Jones had discussed

9   settlement, Bonakdar requested that Jones provide a stipulation for the release of funds.  Because

10  Bonakdar had never responded to the last settlement offer, Jones contacted Bonakdar within two

11  hours, expressing confusion and requesting confirmation that his intent was to accept the offer to

12  settle for 7.5 per cent of the defendant currency.  Bonakdar did not respond.

13       No objections having been filed with the Court, the District Judge entered an order

14  adopting the findings and recommendations on June 12, 2012.  The District Judge signed the

15  default judgment and final order of forfeiture on June 13, 2012.

16       On June 18, 2012, Bonakdar contacted the Government, asking about the status of

17  settlement.  On June 19, 2012, Jones replied that since the parties had not reached a settlement,

18  the case had proceeded, the Court had granted the Government's motion for default judgment,

19  and the case had been closed.

20       Bonakdar protested that the Government had never served his clients with motion papers

21  for the default.  Jones replied that, pursuant to Local Rule 540(d), she was not required to serve

22  Mario Castro and Joe Sandoval, Jr., since they had never appeared in the case.  She reminded

23  Bonakdar that she had warned him in her May 10 e-mail that the default proceedings were

24  continuing and "time was of the essence."  Doc. 21-1 at 61.

25       On August 21, 2012, Mario Castro and Joe Sandoval, Jr., moved to vacate the default,

26  contending that good cause existed to vacate the default since they were represented by counsel

27  and had reached a settlement agreement with the Government when the default judgment was

28

entered on June 13, 2012.  The Government opposes the motion, contending that, although attorney Bonakdar was aware that the Government was actively pursuing default against the claimants by April 18, 2012, he filed no claim, answer, or motion on his clients' behalf.  The Government adds that it neither discussed settlement terms nor reach a settlement agreement with Bonakdar's clients before it filed its motion for default.

## II.   <u>Setting Aside Default Judgments</u>

Default judgments are generally disfavored; instead, courts should decide cases on their merits whenever possible.  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  "The court may set aside  . . . . . a default judgment under Rule 60(b)."  F.R.Civ.P. 55(c).  Rule 60(b) provides:

On motion and just terms, a court may relieve a party and its legal representative from a final judgment, order or proceeding for the following reasons:

(1)   mistake, inadvertence, surprise, or excusable neglect;
(2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4)   the judgment is void;
(5)   the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6)   any other reason that justifies relief.

F.R.Civ.P. 60(b).

Three policy considerations govern a court's discretion in determining whether to grant a motion to vacate a default judgment.  *Wilson v. Moore and Assoc., Inc.*, 564 F.2d 366, 368 (9th Cir. 1977).  First, because Rule 60(b) is a remedial provision, a court should apply it liberally. *Id.*  Second, because the law favors the decision of cases on their merits, default judgments are generally disfavored.  *Id.*  As a result, '(w)here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits.'"  *Id., quoting Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974) (*internal quotation marks and citations omitted).*

///

1    **III.**    **Notifying Claimants in Civil Forfeiture Actions**

2         **A.**    **Clerk's Entry of Default**

3         The Clerk's entry of default pursuant to F.R.Civ.P. 55(a) is the first step in the two-step

4    process leading to a default judgment. *Eitel*, 782 F.2d 17 1471. "When a party against whom a

5    judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure

6    is shown by affidavit or otherwise, the clerk must enter the party's default." F.R.Civ.P. 55(a).

7    This portion of the rule formalizes the judicial recognition that a defendant has admitted liability

8    to the plaintiff by failing to defend the action. *City of New York v. Mickalis Pawn Shop, LLC*,

9    645 F.3d 114, 128 (2d Cir. 2011). The initial entry of default is mandatory: the Clerk of Court

10   *must* enter default against a party against whom relief has been sought if that party has failed to

11   plead or otherwise defend and the failure has been established by affidavit or otherwise.

12   F.R.Civ.P. 55(a) (*emphasis added*).

13        Concluding that a defendant has admitted liability by failing to answer presupposes that

14   the defendant received notice of the pending action. In civil forfeiture actions, Local Rule 540

15   (a) requires:

16        A party seeking a default judgment in an action in rem shall show to the
          satisfaction of the Court that due notice of the action and arrest of the property has
17        been given:
               (1)     By publication, *see* L.R. 530;
18             (2)     By personal service on the person having custody of the property;
               (3)     If the property is in the hands of a law enforcement officer, by
19        personal service on the person having custody before its possession by law
          enforcement agency or officer: and
20             (4)     By personal service or by certified mail, return receipt requested, to
          every other person who has not appeared in the action and is known to
21        have an interest in the property; provided, however, that failure to give
          actual notice to such other person may be excused upon a satisfactory
22        showing of diligent efforts to give such notice without success.

23        Claimants' attorney concedes that they received the requisite notice of the action and

24   arrest of the property on January 26, 2012. "So long as the Government takes the steps mandated

25   by due process to notify the record owner of an impending forfeiture, it is the owner's

26   responsibility to comply with the procedural requirements for opposing the forfeiture." *United*

27   *States v. Real Property*, 135 F.3d 1312, 1217 (9th Cir. 1998). "[C]laimants must strictly adhere to

28

the procedural requirements of the Supplemental Rules to achieve statutory standing to contest a forfeiture action." *United States v. $12,126.00 in U.S. Currency*, 337 Fed.Appx. 818, 820 (11th Cir. 2009).

### B.   Motion for Default Judgment

If the plaintiff subsequently applies to the Court for a default judgment, the plaintiff must serve the party against which default judgment is sought at least seven days before the motion hearing *if that party has appeared personally or by a representative*.  F.R.Civ.P. 55 (b)(2). Local Rule 540(d) provides:

> Upon a showing that no one has appeared to claim the property and give security, and that due notice of the action and arrest of the property has been given, a party may move for judgment at any time after the time for answer has expired. See L.R. 302(c)(19). If no one has appeared, the party may have an ex parte hearing before the Court and judgment without further notice. If any person has appeared and does not join in the motion for judgment, such person shall be given seven (7) days notice of the motion; provided, however, that the Court can extend or shorten the time of the required notice on good cause. See L.R. 144.

Local Rule 540(d).

Despite their failure to file a notice of claim and responsive pleadings, Claimants argue that since they appeared in the action, the Government was required to serve them with notice of the second step of the proceeding: the Government's motion for default judgment.

"Normally, an appearance in an action 'involves some presentation or submission to the court.'"  *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 689 (9th Cir. 1988), *quoting* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2683 at 415 (2d ed. 1983).  Claimants filed no documents in this action, but merely engaged in informal negotiations with the Government.  According to one commentator:

> Rule 55 has provisions requiring notice of any hearing on a default judgment for parties who have "appeared in the action, even though they are in default.  Thus, Rule 55 does not provide any protection against default to a party who appears but fails to plead or otherwise defend.  To avoid default a party must either take steps to file a timely responsive pleading" . . . . . or take some action that indicates an intention to "defend" the suit . . . . . Not every filing or other form of communication with court will meet the Rule 55(a) standards requiring that the parties "plead or otherwise defend."

10 Moore's Federal Practice § 55.11 [2][b][ii] (Matthew Bender 3d ed.).

1    Nonetheless, in service to the policy disfavoring default judgments, courts generally will

2    try to find an appearance based on the defendant's having demonstrated its clear intent to defend

3    the suit.  *Direct Mail Specialists*, 840 F.2d at 689.  Apart from their failure to file any document

4    with this Court, Claimants' actions did evince their intent to defend against forfeiture.

5    ### C.    Mistake, Inadvertence, Surprise, or Excusable Neglect

6    The only arguable basis for setting aside the default judgment pursuant to Rule 60 (b) is

7    mistake, inadvertence, surprise, or excusable neglect.  A failure to file an answer may be

8    excusable neglect if there is a credible, good faith explanation negating any intent to manipulate

9    the legal process.  *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 698 (9th Cir. 2001).

10   Claimants contentions strain credulity.  They claim a good faith belief that settlement

11   negotiations were ongoing and the dispute would be resolved outside of court and assert (1) that

12   Bonakdar knew of the April 12, 2012 filing deadline but failed to file an answer based on his

13   good faith belief that the parties had settled and that the Government would shortly issue a

14   stipulation to release the settlement amount and (2) that Bonakdar was unaware that the

15   Government had filed an *ex parte* motion for default.

16   The facts provided in support of Claimants' motion provide no support for a good faith

17   belief that this dispute was or could be settled.  Although the notice of claim was due on April

18   12, 2012, Claimants neither filed a claim nor requested further enlargement of the time to file.

19   But they did not provide their first settlement demand until four days later on April 16, 2012,

20   when they documented the legitimate income that they had received in recent years but offered

21   no evidence supporting a conclusion that such income was the source of the defendant currency.

22   After the Government pointed out the absence of evidence tying Claimant's income to the

23   currency, Claimants provided nothing further.

24   Nor can Plaintiff's attorney reasonably that he lacked knowledge of the Government's

25   motion for default judgment. Not only did the Government's attorney repeatedly remind him of

26   the Government's pending motion for default judgment, as an experienced attorney who

27   frequently represents clients in civil forfeiture matters before this Court, Mr. Bonakdar can

28

1  reasonably be assumed to be familiar both with civil forfeiture procedure and the Governments'

2  general practice of quickly moving for default judgment when a claimant fails to file a notice of

3  claim and answer.

4         This is the second recent instance of Mr. Bonakdar's ignoring applicable Court procedure

5  until default has been entered against his client(s).  *See United States v. Real Property Located at*

6  *3418 S. Marks Avenue, Fresno, Fresno County, California*, 1:12-cv-00298-AWI-SMS (E.D.

7  Cal.).  Once the Government has taken the steps mandated by due process to notify the record

8  owner of an impending forfeiture, the owner becomes responsible to comply with the procedural

9  requirements for opposing the forfeiture." *Real Property*, 135 F.3d at 1217; *$12,126.00 in U.S.*

10 *Currency*, 337 Fed.Appx. at 820.  Mr. Bonakdar's repeated failure to abide by the Court rules in

11 favor of a strategy of later filing a motion to set aside default judgments abuses the resources of

12 the U.S. Attorney and this Court.

13        When a claimant seeks relief from a default judgment, the Court must resolve any doubt

14 in favor of the motion to set aside the judgment so long as the claim has merit.  *Wilson*, 564 F.2d

15 at 368.  Claimants do not assert a meritorious claim.  Although they mustered documentation that

16 their combined income in recent years was sufficient to reach the amount of currency seized by

17 the Government in its search of Della Sandoval's apartment, they provided no evidence that Joe

18 Sandoval, Jr.'s modest earnings and Mario Sandoval's SSI  benefits were the currency's source.

19 **IV.**   <u>**Conclusion and Recommendation**</u>

20        Claimants, represented by an attorney experienced in civil forfeiture matters, knowingly

21 failed to file a claim and answer in this matter despite their admittedly having received notice of

22 the pending default motion.  Moving to set aside the default judgment, they fail to assert a

23 meritorious claim to the defendant currency.  The undersigned recommends that the District

24 Court deny the motion to set aside the default judgment.

25        These findings and recommendations are submitted to District Judge Lawrence J. O'Neill

26 pursuant to 28 U.S.C. § 636 (b)(1)(B) and Local Rule 72-304.  Within fifteen (15) days of service

27 of this recommendation, any party may file written objections to these findings and

28

recommendations with the Court and serve a copy on all parties.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review these findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specific time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:   March 8, 2013**                          **/s/ Sandra M. Snyder**
                                                            UNITED STATES MAGISTRATE JUDGE